**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **EDGARDO COLON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 16798** |
| | ) | |
| **ANTHONY F. NORADIN,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **TYRONE CLAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 16799** |
| | ) | |
| **ANTHONY F. NORADIN,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Edgardo Colon and Tyrone Clay have filed suit against multiple defendants, including Judge Peggy Chiampas of the Circuit Court of Cook County, for misconduct they say led to their coerced confessions and unlawful detention. Judge Chiampas has moved to dismiss the claims against her based on the doctrine of judicial immunity. For the reasons stated below, the Court grants the motion.

**Background**

Edgardo Colon and Tyrone Clay allege they were wrongfully charged and

detained for the shooting and murder of the Chicago police officer Clifton Lewis.[1]  Colon

spent over ten years in prison before his conviction was overturned and he was

released.  Clay remained in pretrial detention for over twelve years before the charges

against him were dropped.  Plaintiffs separately filed lawsuits against officers with the

Chicago Police Department (defendant officers), prosecutors with the Cook County

State's Attorney's Office (CCSAO), the City of Chicago, and Judge Chiampas.

Both Colon and Clay say they made false confessions related to their charges

following extensive, coercive interrogations.  Relevant to Judge Chiampas's motion is

Colon's coerced confession, which was used to bolster the cases against both Colon

and Clay.  Under the Fourth Amendment and Illinois statute, an individual arrested

without a warrant is afforded a probable cause determination within forty-eight hours to

extend further restraint on his liberty.  U.S. Const. amend. IV; 725 ILCS 5/109-1(a);

*Gerstein v. Pugh*, 420 U.S. 103 (1975).  At this hearing, commonly referred to as a

*Gerstein* hearing, an individual is informed by the court of his rights, including the right

to counsel, and of the charges against him.  At the George N. Leighton Courthouse

where Judge Chiampas sits, there are duty judges who are assigned to hold *Gerstein*

hearings and make probable cause determinations.

On December 29, 2011, off-duty police officer Lewis was shot and killed by two

masked gunmen while working as a security officer at a convenience store on the west

side of Chicago.  On January 3, 2012, Colon was arrested on an unrelated gun charge,

and the defendant officers began questioning him about Lewis's murder.  The defendant

officers had fabricated or unsubstantiated leads linking Colon to Lewis's murder.  Over

---

[1] On a motion to dismiss, the Court takes all allegations in the complaint as true.

the course of forty-eight hours, the plaintiffs allege, the defendant officers used coercive tactics on Colon, including threatening to have his child taken away by the Department of Children and Family Services, threatening to revoke his mother's public housing assistance, and arresting and detaining his girlfriend. Plaintiffs allege that as a result of these tactics, Colon began to make statements consistent with the story the defendant officers were trying to elicit from him, including implicating Clay in Lewis's murder. Still, Colon's story had too many holes, and Colon had not taken any responsibility for the Lewis murder. The defendant officers needed more time to interrogate him.

Nearing the forty-eight-hour mark and believing they lacked probable cause, the defendant officers devised a plan to fabricate a *Gerstein* hearing to enable them to extend Colon's interrogation. But rather than go to the duty judge at the Leighton Criminal Courthouse—who would inform Colon of his constitutional rights and presumably would make proper determination of whether there was probable cause— the defendant officers went to Judge Chiampas. According to plaintiffs, Judge Chiampas was the defendant officers' go-to judge to rubberstamp warrants. As a former prosecutor, Judge Chiampas and the defendant officers had been colleagues and were known to be good friends. And plaintiffs say that Judge Chiampas announced at a public function among her friends who were prosecutors and police officers that she would "always have their backs no matter what." Third Am. Compl. ¶ 78. In this instance, plaintiffs allege that without hearing a word about Colon's case, Judge Chiampas told the defendant officers that they were free to falsely claim that she conducted a *Gerstein* hearing and made a probable cause finding. Judge Chiampas reassured the defendant officers that she would corroborate their false statements if

asked and that she would sign any search warrants throughout the Lewis investigation without question.

On January 5, 2012, plaintiffs allege, the defendant officers brought Colon to the basement of the Leighton Courthouse, created a false report that Colon had a *Gerstein* hearing with Judge Chiampas in which she made a probable cause determination, and drove Colon back to the station, where they continued their coercive interrogation of him.  Failing to adopt the defendant officers' manufactured story, Colon asked for a lawyer repeatedly but was continuously denied representation.  On January 6, 2012, however, Colon broke down and falsely confessed to being the getaway driver at the Lewis shooting and murder.  Clay was detained, in part, due to Colon's confession. Meanwhile, plaintiffs allege, the defendant officers actively suppressed exculpatory evidence, including cell phone mapping that placed Colon and Clay elsewhere on the night Lewis was murdered.

Years later a jury found Colon guilty on the charges brought against him, and the trial judge sentenced him to eighty-four years in prison.  On September 30, 2020, Colon's confession was suppressed by the state appellate court in *People v. Colon*, 2020 IL App (1st) 172627-U.  In addition, plaintiffs allege, other previously hidden evidence was later discovered, and on June 21, 2023, the CCSAO dismissed all charges against Colon and Clay.

Plaintiffs allege that Judge Chiampas played a crucial role in their coercive interrogations, false confessions, and unlawful detainment.  Specifically, Colon and Clay assert claims under 42 U.S.C. § 1983 against Judge Chiampas for, among other things, malicious and unlawful detention, violations of the Due Process Clause of the

Fourteenth Amendment, and failure to intervene.  Judge Chiampas has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## Discussion

"To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face."  *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (internal quotation marks omitted).  "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal quotation marks omitted). At the pleading stage, a court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff."  *Id.* (internal quotation marks omitted).  Judge Chiampas argues that plaintiffs fail to state a plausible claim for relief because they allege she engaged in acts protected by the doctrine of judicial immunity.

## A.    Judicial immunity

Judicial immunity "confers complete immunity from suit, not just a mere defense to liability."  *Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005).  "The doctrine of judicial immunity has been embraced for centuries."  *Id.* (internal quotation marks omitted).  As the Supreme Court has stated, it is essential for the administration of justice that judicial officers are free to act upon their "own convictions, without apprehension of personal consequences" when exercising their authority.  *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (internal quotation marks omitted).  For this reason, "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."  *Id.* at 355–56 (internal quotation

marks omitted).

But although "judicial immunity is broad, it is not limitless." *Kowalski v. Boliker*, 893 F.3d 987, 997 (7th Cir. 2018).  There are two exceptions to judicial immunity.  First, a judge is "amenable to suit for non-judicial acts." *Id.*  Second, a "judge does not enjoy immunity if he or she is acting in the clear absence of all jurisdiction." *Id.* (internal quotation marks omitted).  *See also, e.g., Cossio v. Tourtelot*, 725 F. App'x 406, 410 (7th Cir. 2018) ("Judicial immunity insulates judges from being sued except when a plaintiff sues a judge for (1) nonjudicial actions, i.e., actions not taken in the judge's judicial capacity, or (2) actions, though judicial in nature, taken in the complete absence of all jurisdiction.") (internal quotation marks omitted).  "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Judge Chiampas argues that judicial immunity applies to her alleged conduct and that neither section applies.  Plaintiffs argue otherwise.  They emphasize that Judge Chiampas told the defendant officers to falsely report that she had held a *Gerstein* hearing and made a probable cause determination—neither of which, plaintiffs say, the judge actually did—and also told them she would corroborate their lies on the false report.  Plaintiffs contend these are non-judicial acts and/or were done in absence of jurisdiction.

## 1.    Judicial acts

The parties dispute whether Judge Chiampas's actions constitute judicial acts.  "Judicial acts are distinct from the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Kowalski*, 893 F.3d at 998

(internal quotation marks omitted). For example, the Seventh Circuit and Supreme Court have said, promulgation of "rules of professional conduct, enforcement of those rules, and personnel decisions" qualify as non-judicial acts. *Id.* (citing *Forrester v. White*, 484 U.S. 219, 228–29 (1988)).

To determine whether an act is a judicial act, a court considers whether the act is a "function normally performed by a judge" and what the expectations are of the parties, *i.e.*, whether the parties "dealt with the judge in his judicial capacity." *Id.* (internal quotation marks omitted). A court also considers "whether the act involves the exercise of discretion or judgment" or whether the act is "ministerial" such that a private citizen could have performed it. *Id.* (internal quotation marks omitted).

Conducting *Gerstein* hearings and making probable cause determinations are unquestionably judicial acts. Only a judicial officer such as Judge Chiampas can make a probable cause determination or conduct a *Gerstein* hearing. Indeed, the Fourth Amendment, *Gerstein*, and an Illinois statute require it. And taking plaintiffs' allegations as true, the defendant officers conspired with Judge Chiampas precisely because they wanted her to commit judicial acts for their benefit. Though some acts theoretically may be difficult to categorize as judicial or non-judicial, acts that involve the application of the law to facts are not. Such acts are the bread and butter of a judgeship.

Plaintiffs argue Judge Chiampas's actions were non-judicial because she did not actually do anything judicial in, essentially, allowing her name to be used to justify Colon's continued detention. More particularly, plaintiffs emphasize that: (1) Judge Chiampas spoke with the officer defendants as, the contend, a member of their investigative team, not as a judge; (2) she communicated with the defendant officers

outside of a courtroom; (3) she did not hear the facts of Colon's case before giving the defendant officers permission to falsify the probable cause determination; and (4) she did not conduct a *Gerstein* hearing or interact with Colon before enabling the continuation of his coercive interrogation. But it is clear from plaintiffs' allegations that the bottom-line result was that Judge Chiampas allowed the officers to report she had made a probable cause determination. As plaintiffs describe it in their response to the motion to dismiss:

> The Defendant Officers told Chiampas that they intended to falsely report and falsely testify that they brought Colon before her before [sic] a probable cause hearing and that she had made a probable cause finding. Defendant Chiampas responded by telling the Defendant Officers, in sum and substance, that they had her permission to falsely report and testify that she conducted a probable cause hearing and made a probable cause finding even though no such hearing was conducted, and no such finding was made.

Pls.' Corrected Mem. in Opp. to Def. Chiampas's Mot. to Dismiss at 5-6 (record citations omitted).

In sum, plaintiffs' contentions involve *how* Judge Chiampas performed the judicial act of authorizing Colon's continued detention, not whether the act of authorizing that detention was a judicial act. Indeed, the U.S. Supreme Court has held that a judicial act inappropriately administered does not make the act non-judicial. *See Mireles v. Waco*, 502 U.S. 9, 12 (1991) (rejecting the argument that a judicial act is non-judicial based on error, stating, "if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge."). And a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to

liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S. at 356–57.  Here Judge Chiampas is alleged to have "performed the type of act normally performed only by judges"—authorizing continued detention of a detained person—and "did so in [her capacity as a Circuit Court Judge]." *Id*. at 362.  Thus she did not perform a "nonjudicial" act even if she acted in a completely irregular manner.

### 2.    Absence of jurisdiction

Plaintiffs also appear contend that Judge Chiampas's actions were done in the absence of jurisdiction, but they do not clearly delineate their arguments as between the two exceptions to judicial immunity.  Perhaps for that reason, Judge Chiampas does not directly address this particular point.  For the sake of completeness, however, the Court addresses the issue of absence of jurisdiction.

As previously stated, judges do not enjoy judicial immunity when they act in clear absence of jurisdiction.  A judge "acts in the clear absence of jurisdiction if, her court having been given jurisdiction only over certain types of issues, she decides another type altogether." *Pierce v. Wilner*, No. 21 C 1985, 2023 WL 2745628, at *7 (N.D. Ill. Mar. 31, 2023).  For example, the Seventh Circuit held that a judge was acting in absence of jurisdiction because the allegations against her "center[ed] on her interference in a case to which she was never assigned and over which she had no responsibility." *Kowalski*, 893 F.3d at 998.  In *Kowalski*, one of the judges sued "gratuitously inserted herself into a case proceeding before another judge.  She had no authority to control that colleague's case." *Id.* at 997.  The Seventh Circuit reasoned the judge could not "assert judicial immunity over matters so far removed from matters under her jurisdiction." *Id.* at 998.

9

But acts taken *in absence of* jurisdiction should not be confused with acts *in excess of* jurisdiction, for which a judge is entitled to immunity.  For example, the Supreme Court held that a judge did not act in absence of jurisdiction, but only in excess of his jurisdiction, when he authorized and ratified a police officer's use of excessive force to bring an attorney to his courtroom in connection with matters before the judge for which the attorney had failed to appear.  *Mireles*, 502 U.S. at 13.  The Court reasoned that "such an action—taken in the very aid of the judge's jurisdiction over a matter before him—cannot be said to have been taken in the absence of jurisdiction."  *Id.*

Judge Chiampas may have acted in excess of her jurisdiction, but she did not act in the absence of jurisdiction as that term is used in the case law.  As a Cook County circuit judge in the criminal division, Judge Chiampas had jurisdiction to hold a *Gerstein* hearing and make a probable cause determination.  *See* Ill. Const. art. VI, § 9.  If plaintiffs' contentions are true, Judge Chiampas acted in excess of her jurisdiction because she was not the assigned duty judge tasked to hear *Gerstein* hearings or make probable cause determinations on the day the defendant officers sought assistance to continue interrogating Colon.  But she still acted within her jurisdiction, because the matter was not already assigned to another judge, and nothing prohibited her from conducting *Gerstein* hearings or making a probable cause determinations, even if internal Circuit Court procedures called for such matters to proceed before another judge.  *See Stump*, 435 U.S. at 358 (overruling the appellate court's denial of judicial immunity because no legal authority prohibited the judge's decision to sterilize the non-consenting minor child).

Because the record—even taken in the light most favorable to plaintiffs—establishes that Chiampas's challenged acts were judicial acts and that she did not act in the absence of jurisdiction, she is entitled to judicial immunity.

**Conclusion**

For the reasons stated above, the Court grants Judge Chiampas's motion to dismiss [*Colon* case, dkt. no. 121; *Clay* case, dkt. no. 122]. All claims against her are hereby dismissed based on the doctrine of judicial immunity.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 20, 2024